UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATERPILLAR INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 06 C 5449 |
| | ) |
| ESTATE OF VELTON LACEFIELD-COLE, | ) |
| ANTHONY A. COLE and ALISON H. COLE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the cross motions of Defendant Estate of Velton Lacefield-Cole ("the estate") for summary judgment and Defendants Anthony A. Cole ("Alexander") and Allison H. Cole (collectively referred to as "the children") for summary judgment on the interpleader complaint of Caterpillar, Inc. For the reasons set forth below, the children's motion [58] is granted and the estate's motion for summary judgment [57] is denied. The estate has also moved for leave to amend its answer and to strike the children's cross motion. Those motions [61, 62] are both denied.

### BACKGROUND

In 2005, six years after they were married, Anthony Eugene Cole ("Anthony") and Velton Lacefield-Cole ("Velton") died of gunshot wounds. Velton was shot several

times, in the arm, back, chest, and chin. Anthony's death was caused by a single shot to the head. According to the report of the Cook County Medical Examiner, the causes of death for Velton and Anthony were homicide and suicide, respectively, though the examiner's reports do not provide the time of death for either person. Anthony was 54 years old when he died.

Prior to his death, Anthony worked for Caterpillar, who commenced this suit as an interpleader action to determine the proper distribution of benefits under an employee retirement savings plan ("the Plan") in which Anthony participated. The Plan is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 *et seq*. The terms of the Plan appear to provide[1] that a participant would be paid the proceeds of Anthony's retirement account when he or she reached retirement age, in accordance with 29 U.S.C. § 1055. If a participant dies before reaching retirement age, the Plan specifies that the contents of the account will be paid to the participant's surviving spouse if the participant had been married throughout the one-year period prior to his or her death. Estate's Mem. in Supp., Ex. A, § 9.3(a)(ii). A participant could also designate beneficiaries. *Id*. at § 9.3(a)(i). These beneficiaries become entitled to benefits if 1) the participant had not been married throughout the one year before he or she died or 2) the surviving spouse consented in writing to the

---

[1]The parties have supplied only excerpts of the Plan terms in effect as of January 1, 2003. Estate's Mem. in Supp., Ex. A.

designation. *Id.* at § 9.3(a)(ii). If a participant does not designate a beneficiary (and presumably had not been married for a year before dying), the contents of the account are paid directly to the participant's estate. *Id.* at § 9.3(a)(i).

In 1998, Anthony was divorced. On June 22 of that year, he executed a beneficiary designation form ("the 1998 form") that named Alexander and Allison, his children with a woman other than Velton, as beneficiaries. Below the area where the beneficiaries were named, the form contained three boxes that specified the manner in which the participant intended the assets to be allocated: to all the named beneficiaries in equal shares; to the beneficiaries in the order they were listed (i.e., the first person named who survived the participant would receive all of the assets); or according to another scheme specified in writing by the participant. On the 1998 form, Anthony checked the box directing equal distribution among the named beneficiaries, indicating that he wished for his children to each receive 50% of the contents of his account if he died before reaching retirement age.

In 1999, Anthony and Velton married. In May 2002, Anthony executed a new beneficiary designation form ("the 2002 form"), listing Velton, Alexander, and Allison as beneficiaries, in that order. None of the allocation boxes were checked. The form contained a section for a spouse to consent in writing to a designation of any

beneficiary who was to receive more than 50% of the retirement assets.[2] That section of the form also included conspicuous wording regarding the need for such consent if a married participant designated beneficiaries other than his or her spouse. Velton did not execute the spousal consent section of the 2002 form.

After the parties' deaths in August 2005, Anthony's estate, Alexander, Allison, and Velton's estate all asserted claims to the funds in Anthony's retirement account, prompting Caterpillar to file an interpleader complaint. Before any discovery took place, the parties requested and received a briefing schedule for simultaneous motions for summary judgment. In accordance with this schedule, each filed a motion for summary judgment on May 14. The children also filed a statement of material facts as required by Local Rule 56.1. On June 4, Velton's estate responded to the children's motion but did not file a response to their statement of material facts.

We denied both motions without prejudice, ruling that, despite the parties' implied positions that no material facts were in dispute, facts such as the existence of the marriage, the outcome of a related wrongful death suit pending in state court, and undeveloped issues of law prevented any summary disposition.

---

[2] The parties have not provided any indication of the reason for the discordance between the terms of the Plan and the contents of the beneficiary form with regard to the trigger for spousal consent.

Shortly after we issued our ruling, the estate again moved for summary judgment in its favor. In the renewed motion, the estate contended that Velton and Anthony were married at the time of their deaths, but no competent evidence specifically established the medical sequence of the deaths. According to the estate, this lack of evidence mandates a conclusion that Velton should be treated as a surviving spouse in the absence of definitive proof of the actual sequence of deaths. Alternatively, the estate contends that the Illinois slayer statute should either be directly applied or adopted as federal common law to fix Velton's legal death after Anthony's, regardless of the order of their actual deaths.

The children later filed a cross motion for summary judgment, taking an opposite stance on each of the issues raised in the estate's motion.

**LEGAL STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the

absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

As an initial matter, we briefly address the estate's motion to strike the children's motion for summary judgment. Our order did not provide for the parties to file cross motions, and we do not endorse the practice of filing motions without formal notice or

leave of court. However, the children's cross motion does little more than respond to the same issues raised in the estate's motion and then argue that a ruling in favor of the children on these issues properly mandates judgment as a matter of law in their favor. The estate has fully set forth its response to the children's positions in responsive briefs, and it does not argue that we should defer decision of any of the issues raised in its motion in light of the filing of the cross motion. Consequently, we see no substantive reason why we should not decide the issues raised in both fully briefed motions for summary judgment, and the estate's motion to strike is therefore denied.

The parties no longer dispute that Velton and Anthony were married at the time of their deaths and had been for over a year.[3] Neither has there been any contention that Anthony had reached retirement age before he died. Based on the distribution scheme set out in the Plan, the potential scenarios in this case thus play out as follows: if Anthony died before Velton, she would be considered a surviving spouse.[4] Because

---

[3]The children contend that we should treat Velton and Anthony as divorced at the time of their deaths, but they have not provided any evidence that a final dissolution of marriage had been entered. Accordingly, we do not agree that Velton was no longer Anthony's spouse at the time of her death.

[4]The term "surviving spouse" is not given a special definition in 29 U.S.C. § 1055. Accordingly, we look to its plain and ordinary meaning. *See Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 731 (7th Cir. 2005). As set forth in *Black's Law Dictionary*, the ordinary meaning of "surviving spouse" is a husband or wife by lawful marriage who outlives his wife or her husband, respectively.

she did not execute the spousal consent portion of the 2002 form, any beneficiary designation made by Anthony would be ineffective, and she would be entitled under the Plan to the contents of his retirement account. If Velton died first, she cannot be considered to have outlived her husband and thus would not be a surviving spouse, unless by operation of law the order of deaths can be reversed, thus preserving her status as surviving spouse.

However, if Velton died first and the order of deaths cannot be reversed, Anthony had no surviving spouse who would be entitled to his benefits upon his death. Under the terms of the Plan, the benefits would thus be distributed to the beneficiaries Anthony had designated.

**A. Sequence of Deaths**

As stated above, the estate does not provide evidence that Anthony died before his wife; instead it insists that the order of deaths cannot be determined and we must proceed without any definitive statement on this crucial sequence of events.

The children take the position that Velton predeceased Anthony. In support of this position, they too do not point to any evidence. Instead, they rely upon two admissions the estate has made over the course of this litigation. According to the children, these are judicial admissions, binding on the estate, that have the effect of removing the facts contained within them from contraversion. *See Keller v. United*

*States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). The first appears in the estate's answer to ¶ 16 of the interpleader complaint, which alleges that: "Anthony E. Cole died of a gunshot wound shortly after Velton Lacefield-Cole, who also died of a gunshot wound." The estate unequivocally admitted that allegation. It does not now contest that it admitted that allegation. Rather, it seeks to avoid the effect of the admission by moving to amend its answer to replace this statement with one that gives no indication of the sequence of deaths and thereafter either conduct discovery on the issue or operate from the assumption that the sequence can never be determined.

Fed. R. Civ. P. 15(a) provides that parties should be given leave to amend pleadings when justice so requires. However, the ability to freely amend must be balanced against the prejudice to the opposing party as a result of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Payne v. Churchich*, 161 F.3d 1030, 1036-37 (7th Cir. 1998). The children have now invested time and resources into two rounds of briefing for summary judgment with no hint from the estate that discovery was necessary before that process could be fruitful. The time to press for discovery into the death sequence was before the parties presented the issue to this court (twice) as being ripe for summary adjudication, not after. Summary judgment is not a dry run; "it 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its

version of the events.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quoting *Hammel v. Eau Galle Cheese Factory*, 2003 WL 21665133, at *7 (W.D. Wis. 2003) and *Schacht v. Wisc. Dept. of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Allowing the estate to start from scratch would cause prejudice to the children and would be a waste of judicial resources. On this basis alone, the motion for leave to amend the answer is denied.

Furthermore, a motion to amend a pleading can be denied if amendment would be futile. *See Foman*, 371 U.S. at 182, 83 S. Ct. at 230. In this case, allowing the estate to amend its answer would be futile because it is bound by its second, independent, admission, which occurred in the context of the previous motions for summary judgment. Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The rule mandates that moving and nonmoving parties submit statements of material facts, including specific references to the affidavits, parts of the record, and other supporting materials relied upon. *Id.* Any facts included in a party's statement of facts that are not properly controverted by the opposing party are deemed admitted. Local Rule 56.1(a). Strict compliance with the local rules is mandatory for practitioners appearing before this court; failure to do so results in a binding judicial admission of fact. *See Tobey v. Extel/JWP, Inc.*, 985

F.2d 330, 333 (7th Cir. 1993). These admissions trump evidence that is later produced, let alone evidence that a party claims does not exist at all. *See id.*

The statements of material facts filed by Anthony's estate and by the children each stated that Velton predeceased Anthony. The estate failed to controvert this fact in accordance with the dictates of Rule 56.1(b). Accordingly, that fact was admitted, and that admission continues to bind the estate in this case.

Moreover, in the estate's present motion, it claims that, "there is no competent evidence that specifically identifies the biological sequence of the deaths of Anthony E. Cole and Velton Lacefield-Cole." The estate's framing of the issue in this manner, even aside from the effect of its admissions, concedes that the estate cannot prove a fact essential to its claim for relief; that concession necessitates a grant of the opposing motion for summary judgment. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).

As a result, we conclude that the estate is bound by its prior admissions that Velton died before Anthony. Consequently, for purposes of this case, Velton did not outlive Anthony.

## B. Applicability of Slayer's Rule

Our determination that Velton's death factually preceded Anthony's does not end the inquiry. The estate contends that the legal order of the deaths is reversed by

operation of the Illinois slayer statute or, in the alternative, that we should reach the same outcome by creating federal common law with a like effect.

As a matter of equity, the common law prevented a person who wrongfully killed another from sharing in any property from the victim's estate. C.J.S. *Descent and Distribution* § 56. Many states have codified (and in some instances expanded) the common law rule in so-called "slayer statutes." C.J.S. *Descent and Distribution* § 57. The purpose of these statutes is to prevent slayers from profiting or obtaining a benefit from their wrongdoing, and many do so by creating the legal fiction that the slayer predeceased his or her victim, thus preventing any property transfer to the slayer that would have otherwise taken place at the victim's death. *Id.*

Though there is no federal slayer statute, the equitable principle that underlies such statutes is unquestionably part of federal common law. *See*, *e.g.*, *Mutual Life Ins. Co. v. Armstrong*, 117 U.S. 591, 598, 6 S. Ct. 877, 880 (1886) (holding that a beneficiary of an insurance policy could not obtain insurance proceeds after feloniously killing the insured). The Illinois statute provides that "[a] person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death…" 755 ILCS 5/2-6. The term "benefit" within the Illinois statute has been broadly defined to include such nonproperty interests as the ability to sue on another's behalf for personal injury and the legal right to obtain

private medical records. *Trent v. Office of Coroner of Peoria County*, 812 N.E.2d 21, 25 (Ill. App. Ct. 2004).

Despite the estate's arguments to the contrary, we are not of the opinion that this case is one to which the slayer's rule should apply, regardless of whether the rule stems from federal or state law. The slayer's rule is intended to prevent a party from acquiring a property interest through wrongful conduct. C.J.S. *Descent and Distribution* § 57. In the case of a participant who kills a beneficiary, application of the rule functions as a forfeiture of the participant's right prior to death to determine the identity of a beneficiary. In such instances, several courts have concluded that the slayer's rule is inapposite. *See*, *e.g.*, *Hughes v. Wheeler*, 364 F.3d 920, 924 (8th Cir. 2004) (refusing to apply California slayer statute in diversity case to award insurance proceeds to family of beneficiary murdered by her husband rather than to contingent beneficiary, murderer's father); *Estate of Charlotte Foleno v. Estate of Billy Foleno*, 772 N.E.2d 490, 493 (Ind. App. Ct. 2002) (holding that Indiana slayer's rule did not apply to bar recovery of insurance proceeds by contingent beneficiaries when insured, their brother, murdered primary beneficiary, his wife); *In re Estates of Covert*, 761 N.E.2d 571, 576-77 (N.Y. 2001) (concluding that New York slayer's rule did not prevent proceeds of pension plans and insurance contracts from passing to alternative beneficiaries where insured/participant murdered primary beneficiary, his wife);

*Woolbert v. Kimble Glass*, 54 F. Supp. 2d 539, 542 (concluding that North Carolina slayer statute did not apply to make medically predeceasing spouse a legally predeceasing spouse for purposes of determining correct beneficiary of ERISA retirement account). This distinction is also recognized by the Restatement (Third) of Restitution, which explains that when an insured murders a beneficiary and then commits suicide, a claim by the estate of the beneficiary does not have a claim based in equity against either an alternate beneficiary or the estate of the insured. Restatement (Third) of Restitution §§ 45, 46.

Moreover, even if we were to conclude that the Illinois statute did apply in this case, the only benefit accruing to Anthony in this case would be the removal of the need to obtain Velton's consent to his naming his children as beneficiaries. Semantically, this advantage could be construed as a "benefit" of the sort contemplated by the Illinois slayer statute. However, the Seventh Circuit, in applying the state law, has opined that the breadth of the term is not limitless. *Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 479 (7th Cir. 1999).

*Athmer* involved a wife who was a primary beneficiary under her husband's life insurance policies. *Id.* at 474. Her sister and son (who was not the insured's biological child) were contingent beneficiaries. *Id.* The wife had her husband killed and was barred from recovering the proceeds of the policies. *Id.* The decedent's biological

daughter argued that the contingent beneficiaries should also be barred from recovering by virtue of the fact that the slayer may later inherit some of the proceeds because of her familial ties to them and thus would obtain a "benefit" from her wrongdoing. *Id.* at 476-77. The court concluded that the remote possibility of the slayer benefitting in the factual scenario presented by the case was insufficient to prevent recovery by the murderer's relatives. *Id.* at 479. Of course, this case is not controlling authority on the proper construction of the statute, but it does provide some guidance of that application of the law in unusual circumstances.

We are of the opinion that this benefit, like the one addressed in *Athmer*, is too remote to justify imposing a reversal of the order of the parties' deaths. 178 F.3d at 479. Moreover, the children are not alleged to have had any part in Velton's death, and their connection to their father alone is not a sufficient basis to impose a legal fiction that would remove their status as beneficiaries.

Accordingly, we conclude that Velton was not, as a factual or legal matter, a surviving spouse of Anthony under the terms of the Plan and therefore had no claim to any of the funds in Anthony's retirement account at the time of her death. The estate's motion for summary judgment is therefore denied.

## C. Distribution of Retirement Benefits

The resolution of the question of Velton's status does not completely resolve the issues presented by the parties' motions. Anthony had no surviving spouse; in that

case the Plan specifies that his benefits shall be paid to his estate unless he has designated beneficiaries. § 9.3(a)(i). According to § 9.3(a)(i) of the Plan, "[t]he administrator shall be entitled to rely upon the last designation filed by the Participant prior to his death."

There is no evidence that Anthony executed a designation form after the 2002 form, making it his last designation as a temporal matter. However, the 2002 form contains several errors and inconsistencies, such as the failure to indicate an allocation scheme and the listing of the date as 2009. Despite this, the children argue that the form should be interpreted to indicate that Anthony intended Alexander and Allison to share equally any benefits paid to them from his retirement account. According to the children, Anthony substantially complied with the requirements of beneficiary designation, so the 2002 form controls the distribution of assets. They buttress their contention by pointing to Anthony's unequivocal expression of his intent that his children share his retirement benefits equally in the 1998 form. We agree with this position, particularly in light of the lack of evidence that Anthony had any contrary intention.

Furthermore, even if we treated the 2002 form as legally ineffectual because of its deficiencies, that conclusion would merely cause the 1998 form to be treated as "the last designation filed" by Anthony before his death. The 1998 form clearly indicated that Anthony intended his children to each receive 50% of their father's benefits. As

a result, regardless of which designation form controls, Allison and Alexander are each entitled to 50% of the contents of Anthony's retirement account. Summary judgment in their favor on that issue is therefore appropriate.

**CONCLUSION**

Based on the foregoing, the motion for summary judgment of Alexander Cole and Allison Cole [58] is granted. The motions of the estate of Velton Lacefield-Cole for summary judgment [57], for leave to file an amended answer and correct the record [61], and to strike the cross motion of Alexander Cole and Allison Cole [62] are denied.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   September 27, 2007